1

Pages 1 - 21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

MEDIA.NET ADVERTISING FZ-LLC, a        ) Case No. 14-cv-03883-EMC
limited liability company,             )
                                       )
        Plaintiff,                     )
                                       )
   v.                                  )
                                       )
NETSEER, INC., a Delaware              )
corporation, and DOES 1–10,            )
                                       )
                                       )
        Defendants.                    )
_____)

                                    San Francisco, California
                                    Thursday, June 11, 2015

            TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL
         ELECTRONIC SOUND RECORDING - FTR 10:35-11:01


<u>APPEARANCES</u>:

For Plaintiff Media.net Advertising FZ-LLC:

                Newman Du Wors LLP
                1900 Powell Street
                Suite 603
                Emeryville, CA 94608
        **BY:**     **LEEOR NETA, ESQ.**

For Defendant NetSeer, Inc.:

                Pillsbury Winthrop Shaw Pittman LLP
                2550 Hanover Street
                Palo Alto, CA 94304
        **BY:**     **VERNON H. GRANNEMAN, ESQ.**

*Produced by Kelly Polvi, Contract Transcriber, from
FTR-recorded WAV files utilizing court reporting software and
hardware.*

**Thursday, June 11, 2015**                    **10:35 A.M.**

**P R O C E E D I N G S**

**---oOo---**

**THE CLERK**:  Calling case C 14-3883, Media.net v. NetSeer.

Counsel, please come to the podium and state your name for the record.

**MR. NETA**:  Good morning, Your Honor.

**THE COURT**:  Good morning.

**MR. NETA**:  Leeor Neta, counsel for the plaintiff, Media.net.

**THE COURT**:  All right.  Thank you, Mr. Neta.

**MR. GRANNEMAN**:  Good morning, Your Honor.  Vernon Granneman appearing for NetSeer.

**THE COURT**:  Thank you, Mr. Granneman.

Let me say preliminarily I have never seen a joint -- and I use that term loosely -- case management conference of this size and nature.  And it's not something I expect; it's not something, frankly, that I would invite.

If you want to bring motions -- substantive motions, if you want to bring a motion for summary judgment, if you want to bring a motion to -- for discovery -- and I do have your discovery letter; we'll talk about that in a moment -- you can do that.

And I don't mind a little preview of what the basic arguments are, but I don't need 29 pages of briefing.

And when I say "joint," I want something that's joint, not just submissions of position; response; reply; sur-reply; surrebuttal; sur-sur-surrebuttal, and that kind of thing.  It's not helpful to me.

And I'm just going to make it clear:  I expect cooperation from experienced attorneys, as you are.

And I know you went to Judge Beeler and that hasn't resolved this case and we'll talk about that, but we're going to do this case in an efficient manner.  And so far, what I've seen is not very efficient.

So let's talk about sort of where we go from here and what remains to be resolved.

First let me address this discovery issue and the timing of things.

I did set forth an initial phase of discovery -- as I almost always do -- what I cause a Phase 1 discovery that's designed to be limited and focused in order to facilitate a settlement conference or mediation or E and E or something of that nature.

If it settles, my general rule at that point is that we get into real discovery.  Phase 2.

I do not -- you know, sometimes it's sort of automatic, once the settlement conference has not yielded a resolution; sometimes the parties wait until they come here for the CMC post-settlement conference.  I don't hear that much.  But my

general mode is that we're going to proceed with discovery.

Now, I understand that NetSeer wants a stay on everything because it feels it has a meritorious motion on validity of the copyright and wants to bring that.  My view is if you want to bring an early -- either motion -- some kind of motion to dismiss or summary judgment -- it sounds like it's going to have to be a summary judgment -- and use your one summary judgment motion because of my one-summary-judgment rule, that's fine, you can do that.  I'll entertain that and we can talk about what discovery, if any, you need, or whether you have everything you need, now it's more of a legal claim.

But I am not going to halt discovery for, you know, six weeks or eight weeks or whatever.

On the other hand, to the extent that there are claims that the discovery that's been propounded is burdensome, not crafted to get to the things that need to be gotten to, such as looking at profits and apportionment of profits and actual revenues earned during this limited period of -- 3-month period, or to verify that the revenues was a matter of 30,000 or something and not, you know -- we can do that.  But I either want the parties to come to agreement or I'm going to refer this to a magistrate -- a discovery magistrate judge to help you, if you can't come to agreement.

But, as all discovery, it needs to be focused and not duplicative or beyond the pale.  But I'm going to allow

discovery to proceed on the merits of this thing.

But if you want to bring an early summary judgment motion, I only set deadlines for last day to file, not first day to file summary judgment motion.

But I do want to make sure that before you do -- so I'm not going to run into a problem of, "Well, we don't have enough discovery to oppose it" or et cetera -- that we have that lined up.

So let's find out if that is an option, in terms of early summary judgment is something you want to go ahead and use your one token on, and bring that early.  If you think that that will resolve this case, that's certainly something that we can do.

**MR. GRANNEMAN**:  Well, I do think that there's a reasonable chance that it would resolve the case.

When we were here last time, as I told you, at that point we realized that the amount of revenue that we had realized -- gross revenue -- from the use of this accused landing page was somewhere between 10,000 and $30,000.  That's our share.

The gross revenue realized, based on our initial assessment -- I had the client do an analysis and I said, "Err on the side of including revenue that may not be includable," and so they came back with a number slightly below $93,000.

We share that with the ad publishers, and the ratio varies from 10 to 30 percent.

So our share of that 93,000 would have been roughly 10,000 to $30,000.

In connection with the settlement conference -- and they have got sworn discovery responses from us that say that.

Then, in connection with the settlement conference, I had the client go back and prepare a much more refined report. It's a daily report by publisher, by -- with the revenue, the number of page views, and the like.

And that came down to a number of approximately 24,000.

And it's roughly 8,000 to 24,000 in revenue that NetSeer realized from the use of this page.

That has been met with what you've now seen in this proposed amended complaint, a claim for millions of dollars in damages with -- from some interference with Microsoft, the addition of state law claims, and a punitive damage claim.

My initial feeling -- without looking into the copyright issue substantively at all -- I am not a technical expert, personally -- I thought that -- with so little revenue involved, that it made sense to try to get this into a settlement mode.

I have no optimism, based on my experience in the settlement conference, that the case is settleable and, based on our discovery dispute, that we can negotiate something that's not going to end up costing my client tens of thousands, if not hundreds of thousands of dollars to generate the

discovery.

What I do believe, based on my research after the settlement conference, as I put in our position statement in the case management statement, is that the courts and the copyright office have struggled with how to deal with copyright law related to computer programs and this is not a computer program; this is a lesser HD mode code.  In fact, it is cascading style-sheet markup code.

As it turns out, in December of last year -- these copyrights issued in August of 2014.  In December, the copyright office came out with the first comprehensive set of guidelines describing websites and website content copyrightability, and, in my view, makes very clear that this type of cascading style-sheet markup is not copyrightable. Code that simply determines the layout and appearance of a web page that is not even perceptible to the typical user is not eligible for copyright protection.

So we have -- I have got an expert and we have gone down that path.  I just wanted to make sure I understood exactly what I was dealing with here.

What I think is -- what I was trying to encourage -- and for my part in this joint statement you have my apology, to the extent that this is not helpful to the Court.  I was hopeful that it would be helpful -- my part of it, at least -- to the extent that it would highlight the fact that we have a very

serious issue about whether there's anything copyrightable in the style-sheet information that was partially copied by my client.

I think what -- the significance of this has been badly exaggerated, and I think if the Court understands exactly what this code was and how it fits into our respective businesses in contextual advertising, I think the Court will be convinced that it is a very small thing.  It is something that it could have been written from scratch in two hours.  I think their damages are the cost of engineering time to write the thing for two hours.

I can give you greater explanation, if it would be useful.

THE COURT:  Well, so why not -- rather than getting into the merits now, why not tee this up -- you feel that it's clear, especially with this guidance from the copyright office -- which is only guidance, obviously.

MR. GRANNEMAN:  Right.

THE COURT:  It's entitled a deference -- it's not necessarily entitled "Chevron Deference," it's entitled whatever deference, or things that do -- let's get it on the table.

Why not -- I mean, it sounds like a fairly legal -- I don't know how much fact dispute is involved, but it sounds like we can set this up for summary judgment or summary

adjudication.

MR. NETA:  I agree with Your Honor.  I think there's actually very little discovery that we need in order to tee up this issue.

Mr. Granneman, to his credit, raised this issue with me in early April when we met and conferred about discovery.  At that point I invited him to file a motion.  He didn't do so. In the meantime, we reviewed the evidence, we reviewed some of the discovery, and filed a motion for leave to amend the complaint, which is pending.

But that's not at all directed to that motion for summary judgment, which he had threatened to file months in advance and had done nothing about.

THE COURT:  Well, what if the defendant is right on this question of validity of copyright?  What does that do to your proposed claims in your amended complaint?

MR. NETA:  It doesn't affect them in any way, Your Honor. It doesn't affect them in any way.

THE COURT:  So even if there's no copyright viola- -- remind me of what the added claims are.

MR. NETA:  Right.  It misappropriated our results pages -- precisely, how they looked -- to gain an unfair position in that test, competition, with Microsoft, presenting that they essentially do exactly what we do, harming our market share, infringing our ability to obtain as much revenue from

Microsoft as we had in the past on an unfair basis.  Because it was just unfair -- it was just copying.

THE COURT:  Even though it's not a -- even though it was not protected -- if one were to find -- and not protected by copyright, you have the basis for an unfair competition claim?

MR. NETA:  That's correct, Your Honor.  We have binding Ninth Circuit authority on that point.

THE COURT:  And what is unfair about it, if it's not copyrightable?

MR. NETA:  Because they just simply copied it without actually investing any time or energy into creating it themselves, and they held it out as something that they do, without explaining that they copied it from us and --

They obtained market share unfairly.  It's an unfair competition claim that also has intentional interference components to it as well.

THE COURT:  And this hinges on this Microsoft competition?

MR. NETA:  To some extent, yes.  But also to the extent NetSeer used what they copied from us to obtain business from our clients that we'd had in the past and have come to us and said --

THE COURT:  What evidence do you have at this point of businesses appropriated from your client to their client?

MR. NETA:  We've had at least one conversation with a

client that said that they worked with NetSeer and that they told them that they do everything that we do, if not better.

And then we're not able, really, to evaluate how many clients NetSeer has talked to because the summary table that they provided doesn't -- in fact, none of the discovery they provided to us identifies the clients on whom -- for whom they deployed this code.

If they were able to identify those customers, we could then evaluate how many of those were previously ours and to what extent our market share and our profits and revenues have diminished.

That is all information that goes to the issue of damages.

Moreover, Your Honor, and though I deeply respect your Phase 1 discovery period and the parameters that you set within that, we're entitled to any profits related to their copying, even if it extends outside the infringing period, if they use the copying to acquire a client.

Let's assume, for example, that NetSeer obtained client Ajax via their copying, and then they stopped copying four months later but they still have Ajax as a client and we can demonstrate that Ajax would not be a client, if not for their copying.  We're entitled to those profits as damages.  And that's discovery that we haven't been allowed to take yet. Again, out of respect for your Phase 1 discovery.

**THE COURT:** So it's the revenues gleaned from a stolen client, is what you're saying.

**MR. NETA:** Exactly.

**MR. GRANNEMAN:** Your Honor, may I comment --

**THE COURT:** Yes.

**MR. GRANNEMAN:** -- on that?

The three state law claims, inter- -- tortious interference and unfair competition, all require a wrongful predicate act. I don't know what Ninth Circuit authority he's talking about. The look and feel of a web page is not protectable under any of those state law theories and it's not protectable under copyright law. It is simply not.

Their copyright does not extend to anything that gets displayed on the screen. It doesn't. And they've -- the correspondence they've produced from the copyright office says that.

The lawyer in his firm who prosecuted the copyright was told explicitly by the copyright office that the copyright, such as it was, does not extend to the screen display.

What we -- what was copied was a portion of a style sheet which is a component of the code that renders a landing page. Most of the code on our landing page, we wrote. NetSeer owns. We wrote it. All that was copied was the style sheet.

**THE COURT:** So why don't we set this all -- you claim that even with these amended claims that they want to put in

that there's no merit, that they can't -- there's a failure to state a claim --

**MR. GRANNEMAN:**  Correct.

**THE COURT:**  -- because there's no copyright, you can't copyright a look and feel, there's no tort that underlies a tortious interference, along with your issue of *Liddy*.  Why don't we just tee that up?

**MR. NETA:**  I agree with Your Honor.

What I think, if I may -- would advise you to do, I think there is some discovery that needs to be taken.

With respect to what Mr. Granneman has just said about the nature of his code and who wrote it versus our code and who wrote it, that's some discovery that's necessary --

**THE COURT:**  How does that inform the question of whether there -- because that might inform whether or not there is a underlying tort?  I mean, if it's -- if it's not protectable, how does that inform the question?

**MR. NETA:**  I think it informs the question of the copyright infringement claim, to the extent he claims that they didn't copy it, actually did not copy it.

**THE COURT:**  I don't think that's what the issue is, sounds like.

**MR. NETA:**  If he's saying that that's not the issue, I'm just not entirely sure what exactly Mr. Granneman -- on what grounds he would like to move for summary judgment.

THE COURT:  Well, let me ask Mr. Granneman.

If I allow the motion to amend -- which I -- you know, in all likelihood I'm going to have to allow it because it's Rule 15 we're really on.  I know you don't like because it expands the case and suddenly it's a million dollar case and not a $30,000 case, but that's not the kind of prejudice that prevents an amendment under Rule 15.

So, you know, we could go through and brief the whole thing, but everybody's been through and everybody knows Rule 15 and the test under the Ninth Circuit and it's very hard for us to deny a motion to amend this early in the case.

So if we just -- if I just allow the amendment to be filed, then you, since you're the one who believes that these are -- even with the amendment -- are legally meritless because of the copyright limitations, et cetera, et cetera, you can decide whether -- it sounds like you don't think you need any discovery, these are legal issues.  That -- it might even be a 12(b)(6) or, you know, a truncated motion for summary adjudication or partial summary adjudication.

Set it up, and then, if -- once you see his motion --

MR. NETA:  Right.

THE COURT:  -- then you can -- you can determine what you need in discovery to answer the motion, not just general -- we don't need to get into damage -- we're not even at damages at this point.

**MR. NETA:**  Right.

**THE COURT:**  Since there seems to be no immediate interest in going back to mediation, then that's why I would allow early damage discovery so that we can tell is this a $30,000 case or a $10 million case and they'll tell.

But it sounds like right now we got to resolve this legal question, and so we're kind of taking things a little bit differently than I normally would.

So why not allow the amendment, you then -- we'll set a date for you to file your motion, but we'll have a slightly longer period for the briefing so that if you feel you need some focused discovery to answer the motion, not just general discovery for the case -- it would be Phase 2, not Phase 3.

**MR. NETA:**  Right.  We could (indiscernible) 56 relief, if we can -- and point out something particular that we need.

Though I was intrigued by your suggestion also, Your Honor.  If you're inclined to grant the motion for leave to amend, it will be an opportunity for Mr. Granneman to file a 12(b)(6) motion.  And if it's a squarely legal issue, that should resolve it, I would think.

**THE COURT:**  That would resolve that.  And I don't know about the -- but the whole question of validity of copyright, I want to resolve that too.  Because that's also standing in the way of --

**MR. NETA:**  Right.

**THE COURT**:  -- of the parties.

You can do both.  You could file a 12(b), combined with a Rule 56.  Or just call a Rule -- whatever you think is appropriate.

**MR. GRANNEMAN**:  Right.  Understood.

**THE COURT**:  But what I'm hearing is that there is these key threshold legal issues that the parties disagree on that this Court might be helpful in resolving that and then see where we stand.  Do we got a case, we don't have a case?  Do we have a case; what's the size of the case?  Then we can talk about what I would call Phase 3, you know.

So then, what's left of the case, or whatever remains, we can then focus discovery on damages and things like that and then see if there's another chance to mediate, now that you know what cause of actions exist, what the parameters are, what the universe of damage might be.

Because I can see why you haven't succeeded at this point:  There's too many disagreements on predicate issues.

So yes, you have a motion scheduled for July 16th on -- for leave to filed amended complaint.  If we could go through that whole process, that would mean we'd wait another month before -- I'm inclined to simply say I'm going to allow -- I mean, if you have some arguments under Rule 15 now that you think would convince me otherwise, I want to give you due process and hear that.  But given the general test and the

timing of such, I have a hard time seeing how I would not allow the first amended complaint.

MR. GRANNEMAN:  Your Honor, let me -- well, if the Court is inclined to do it, to grant the motion sort of *sua sponte*, then I'll accept that and that's the way we'll -- that's the way we'll do it.

If the question is whether we will stipulate, I would want to talk to my client before I stipulated to allow the filing of an amended complaint that included a punitive damage cause of action.

THE COURT:  Sure.  And I wouldn't ask you to stipulate on the spot.

MR. GRANNEMAN:  But here's -- my only issue is the timing of it.  Because I would bring a motion to dismiss.  My -- the consultant that I'm using is on vacation until the end of this month --

THE COURT:  Sure.

MR. GRANNEMAN:  -- so I just want to have -- and I have not done all of the research I would need to do on the state law claims as well.

But I endorse this approach, I think this is the right way to get to the heart of the matter and see where we're headed, and --

MR. NETA:  I'm welcome, Your Honor, to set a briefing schedule now; something that would be convenient for

Mr. Granneman and myself.

THE COURT: Yeah. Well, let's set it based on what you think --

MR. GRANNEMAN: Just simply something to where -- filing toward the end of July, would be all I would be --

THE COURT: Okay. And therefore any response to the motion to amend -- or to the amended complaint will be deferred, and give you until that July.

So your response may well be a Rule 12 motion.

MR. GRANNEMAN: Right.

THE COURT: All right. I'm going to grant the motion to amend the complaint, and it will be deemed -- I don't know if you have to file it or it's deemed filed, but whatever.

MR. NETA: I believe we have to file it, Your Honor.

THE COURT: Why don't you go ahead and file it within the next day or so.

MR. NETA: Of course. It will happen this week for sure.

THE COURT: And then, based on your projection of how much time you need for either a combination Rule 12, Rule 56, or you can call it Rule 56 or --

MR. GRANNEMAN: Right.

THE COURT: -- call it on both fronts, the copyright question, the tortious interference claim, et cetera, so you can take your full swing.

And you want end of July?

MR. GRANNEMAN:  End of July.  What's -- I just need a calendar.

MR. NETA:  I'll tell you right now, Vernon.

THE COURT:  30th?  Or the 23rd?

MR. NETA:  31st is a Friday.

THE COURT:  Either 30th or -- the 30th.  I'd like to do it on a Thursday, then we -- because my calendars are on Thursday, and then give you, for instance, five weeks, or something like that.

MR. NETA:  That's great.

MR. GRANNEMAN:  So we file by the 30th?

THE COURT:  Let's say the 30th file either Rule 12 or 56 or a combination thereof, and then the response to that would be --

MR. NETA:  September 3rd.

THE COURT:  Third.  And -- with the understanding that you would take focused discovery based on the motion.

MR. NETA:  Of course.

THE COURT:  It's sort of a Rule 56(d) type thing.

And then, let's say, two weeks after that -- since this may be complicated, give you some time -- file on the 17th?  No.  Let's see.  Yeah.

MR. GRANNEMAN:  Reply, 17th?

THE COURT:  Reply is on the 17th, and then we can hear the matter on October 1st.

And let's see if we can get this part resolved.

And I am going to then limit discovery at this point to focus just on the task at hand.  So not general -- I know it's in the offing, I know there's going to be some issue about the scope of damages discovery, but I want to focus -- I don't want to -- I'm going to put that off for now and focus on the merits of this.

And if you tell me you're ready to go back to mediation and you need damages information, we can consider that.  But right now it sounds further ADR is not in the immediate future until we resolve this motion.

So I want discovery -- I call it Phase 2 discovery -- to focus on the opposition to the summary judgment motion once it's filed, and so it will be measured by relevance and materiality relative to that motion.

MR. GRANNEMAN:  Understood.

THE COURT:  And then we'll defer other discovery until we resolve this.

But let's see if we can get this on track.  And I obviously would love to get you back for some ADR process sooner rather than later, but it sounds like we've got to resolve this.

MR. GRANNEMAN:  Understood.

THE COURT:  All right.

MR. NETA:  Thank you, Your Honor.

(Off-the-record discussion between Clerk and Court.)

THE COURT:  Yeah.  Yeah.

So that we're going to vacate the July 16th motion on the motion to amend, since I've already granted it, so you don't have to spend any more time on that.

All right?

THE CLERK:  The hearing on October 1st will be at 1:30.

MR. NETA:  Thank you.

THE COURT:  Okay.  We'll see you then.

MR. GRANNEMAN:  Thank you, Your Honor.

MR. NETA:  Thank you, Your Honor.

THE COURT:  Thank you.

(Proceedings adjourned at 11:01 A.M.)

## CERTIFICATE OF CONTRACT TRANSCRIBER

I, Kelly Polvi, CSR, RMR, FCRR, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further, that I am not financially nor otherwise interested in the outcome of the action.

Dated July 14, 2015.

Kelly Polvi, CSR #6389, RMR, FCRR
Contract Transcriber

*Kelly Polvi, CSR, RMR, FCRR*
*P.O. Box 1427*
*Alameda, CA 94501*
*(503) 779-7406; kpolvi@comcast.net*